UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SYLVIA M. FLEMING, Individually and as
Administratrix of the Estate of Preston R.
Fleming,

                            Plaintiff,                       No. 6:07-CV-616-DNH-DEP

       v.

YOGENDRA SHARMA and SHEBAB ZAKI,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

LAW OFFICE OF NIRA T. KERMISCH       NIRA T. KERMISCH, ESQ.
Attorneys for Plaintiff
36 West Main Street, Suite 405
Rochester, New York 14614

NEW YORK STATE ATTORNEY GENERAL   CHRISTINA L. ROBERTS-RYBA, ESQ.
Attorneys for Defendants                        JEFFREY M. DVORIN, ESQ.
Albany Office of the Attorney General        ADRIENNE J. KERWIN, ESQ.
The Capitol
Albany, New York 12224-0341

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       Plaintiff Sylvia M. Fleming ("plaintiff") brings two causes of action against defendants Dr. Yogendra Sharma and Dr. Shehab Zaki. First, as Administratrix of the estate of her late husband, Preston Fleming, Jr., plaintiff alleges defendants were deliberately indifferent to her husband's serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment while serving his prison sentence at Mohawk

Correctional Facility ("MCF").  Second, in her individual capacity, plaintiff brings a claim for loss of consortium as a result of her husband's death while under the defendants' medical care at MCF.

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiff opposes the motion with respect to her first cause of action but wholly fails to address defendants' argument as to summary judgment for her loss of consortium claim.  Therefore, plaintiff's second cause of action will be dismissed.  Defendants' motion was taken on submit without oral argument.

## II. BACKGROUND

On February 26, 2004, Mr. Fleming was sentenced to a prison term of two-and-one-third to seven years for violating the terms of his probation.  At that time, he was being treated for a myriad of health problems, including severe congestive heart failure, hypertension, diabetes, arthritis, and other ailments.  New York State Department of Corrections ("NYSDOC") medical records indicate that, prior to his incarceration, Mr. Fleming was under the care of a cardiologist and had undergone a number of by-pass surgeries and angioplasties.  Additionally, his cardiologist had been administering weekly intravenous infusions of Natrecor, a drug prescribed to heart patients in order to maintain cardiac stability and prevent decompensated congestive heart failure.

Both defendants are employed by the NYSDOC as physicians within the Walsh Medical Unit ("Walsh") at MCF and are responsible for providing medical care to inmates such as Mr. Fleming.  Dr. Sharma serves as Walsh's Director and Dr. Zaki is a clinical physician.  Upon beginning his prison term, Mr. Fleming was admitted to Walsh on July 13, 2004, at which time Dr. Zaki first examined him.  Defendants were provided memoranda from

Mr. Fleming's treating physicians warning of his unstable condition and his corresponding need for intravenous medications, including the drug Natrecor. See Defs.' Answer, Dkt. No. 6, ¶ 13 (admitting the memoranda were included in Mr. Fleming's medical records and that his prior physicians recommended he be treated with Natrecor). Among the records were two letters from Mr. Fleming's cardiologist, Dr. Roger K. Vince, written in anticipation of Mr. Fleming's pending incarceration. See Ex. A to Pl's. Aff., Dkt. No. 15-2. The first letter, dated December 4, 2003, stated that Mr. Fleming suffered from congestive heart failure, had endured multiple heart attacks, and "require[d] intravenous medication on a weekly basis to keep his cardiac status stable." Id. at 1. The second letter, dated February 4, 2004, reiterated Mr. Fleming's various heart conditions and warned:

> Should he be incarcerated, he will continue to need his weekly intravenous medications to keep his cardiac status stable. Without these medications, he will need to be hospitalized frequently for decompensation of his heart failure and his cardiac disease. Without this intravenous medication, there is a very high likelihood that he will die within the year.

Id. at 2.

Also included in Mr. Fleming's records was a letter from his primary care physician, Dr. Michael Foote, dated March 8, 2004. Dr. Foote's correspondence repeated many of the same warnings included in Dr. Vince's letters. Dr. Foote's letter warned of Mr. Fleming's relatively unstable coronary condition and stated it was "medically necessary for him to attend a CHF clinic weekly to receive intravenous Natrecor." See Mr. Fleming's Medical Records, Dkt. No. 13, 608.[1] Additionally, Dr. Foote concurred with Dr. Vince as to the potentially fatal results should Mr. Fleming not receive Natrecor: "If he does not receive this

---

[1] Mr. Fleming's medical records have not been filed electronically.

- 3 -

aggressive therapy he will most certainly have worsening of his condition requiring hospitalization and, otherwise, contributing to morbidity and potential mortality." Id.

Contrary to the instructions from Mr. Fleming's treating physicians, defendants declined to administer Natrecor to Mr. Fleming when he was admitted to Walsh. On June 14, 2004, Dr. Zaki ordered a consultation with a cardiologist, Dr. Ashok Patel. At that time, Dr. Zaki informed Dr. Patel of Mr. Fleming's prior treatment with Natrecor. According to defendants, and in contrast to the memoranda from other physicians included in Mr. Fleming's medical records, Dr. Patel stated that Natrecor was not necessary to treat Mr. Fleming's heart conditions. However, Dr. Patel's consultation report indicated that his findings were only recommendations, and the "final determination will be made by the inmate's NYSDOCS physician." See Mr. Fleming's Medical Records, Dkt. No. 13, 286.

Mr. Fleming's condition worsened from July 13, 2004 to July 27, 2004, after which he was transferred to St. Elizabeth Hospital for further treatment of his acutely decompensated heart failure. His condition improved at St. Elizabeth Hospital after he was prescribed Natrecor. Like many of his previous doctors, Mr. Fleming's treating physician at the hospital, Dr. Larry Maynard, also suggested that "Natrecor might be a good treatment for him . . . ." See Mr. Fleming's Medical Records, Dkt. No. 13, 267. Dr. Maynard also suggested dobutamine as an alternative treatment. Id.

Mr. Fleming was released from the hospital and transferred back to Walsh on August 7, 2004. According to the hospital's transfer summary record signed by Dr. Anju Varansani, Mr. Fleming was advised upon his release that he should continue to receive Natrecor treatment on an outpatient basis. See id. at 265. Once again, however, despite the recommendations of the aforementioned physicians, defendants did not prescribe Natrecor

for Mr. Fleming after he returned to Walsh. See Defs.' Answer, Dkt. No. 6, ¶ 20.  Plaintiff states in her affidavit that she repeatedly requested her husband be treated with Natrecor but that defendants frequently told her they were still considering whether to prescribe the drug. See Pl's. Aff., Dkt. No. 15, ¶¶ 41, 44-45, 66-67.

Defendants allege Mr. Fleming was noncompliant with his prescribed diabetic diet, thereby causing him to suffer from increased glucose levels and corresponding health complications. See Defs.' Statement of Material Facts, Dkt. No. 12-9, ¶¶ 16-17.  In response, plaintiff maintains that her husband was too sick to consume foods as a result of defendants' alleged failure to treat his heart condition. See Pl's. Aff., Dkt. No. 15, ¶ 58.  Mr. Fleming's condition gradually worsened, and he died on June 13, 2005 as a result of cardiorespiratory failure due to severe chronic ischemic heart disease. See Mr. Fleming's Medical Records, Dkt. No. 13, 4-5.

## III. DISCUSSION

### A. Motion for Summary Judgment of the Eighth Amendment Claim

Defendants move pursuant to Federal Rule of Civil Procedure 56 for summary judgment of Mr. Fleming's Eighth Amendment claim brought by plaintiff pursuant to 42 U.S.C. § 1983.  Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 323, 106 S. Ct. 2458 (1986).  After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial. FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

Defendants assert three arguments for why they are entitled to summary judgment: (1) that there is insufficient evidence for a reasonable trier of fact to determine they acted with deliberate indifference towards Mr. Fleming's medical needs; (2) with respect only to Dr. Sharma, that there is insufficient evidence to hold him liable because of his limited supervisory role in Mr. Fleming's medical care; and (3) that they are entitled to qualified immunity.

### 1. Evidence of Defendants' Deliberate Indifference

To establish liability for an Eighth Amendment claim for inadequate medical care a plaintiff must show that the defendants acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976).  Whether a defendant's conduct violates the Eighth Amendment entails a two pronged analysis: first, the alleged inadequacy of medical care must be "sufficiently serious" because of the severity of the prisoner's medical condition, Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)); second, the

defendant must have acted with a "sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280 (citing Wilson v. Seiter, 501 U.S. 294, 299-300, 111 S. Ct. 2321, 2324-25 (1991)).

The second requirement for an Eighth Amendment violation is necessarily subjective. See Salahuddin, 467 F.3d at 280.  The defendant must be aware of and ignore a substantial risk to the inmate's health and safety. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citing Farmer, 511 U.S. at 837, 114 S. Ct. at 1979).  Additionally, the defendant must be privy to facts from which he could infer that the inmate was subjected to a substantial risk of harm, and the defendant must have actually drawn such an inference. Chance, 143 F.3d at 702 (citing Farmer, 511 U.S. at 837, 114 S. Ct. at 1979).  Mere negligence, even if giving rise to a claim for medical malpractice, is insufficient to sustain a claim under the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; Salahuddin, 467 F.3d at 280. Although, the requisite mental state does not go so far as to require proof that the defendant either intended such harm or was certain that such harm would result, there must be evidence from which a reasonable fact finder could conclude that the defendant consciously disregarded a substantial risk of harm. See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer, 511 U.S. at 839, 114 S. Ct. at 1980); see also Salahuddin, 467 F.3d at 280.

Defendants do not challenge the first prong for whether their conduct violated Mr. Fleming's Eighth Amendment rights, i.e., whether his medical condition was sufficiently serious.  Instead, defendants argue that plaintiff has not presented sufficient evidence to show that they were aware of facts from which they could infer there was a substantial risk of serious harm and that they in fact drew such an inference. See Defs.' Mem. of Law in Supp., Dkt. No. 12-10, 2.

The crux of plaintiff's argument for why defendants were deliberately indifferent to her husband's medical needs is that they refused to administer Natrecor despite the repeated recommendations and warnings from multiple physicians.  Defendants argue that, as a matter of law, their medical judgement not to administer the drug does not constitute deliberate indifference to Mr. Fleming's medical needs, especially in light of the consultation with Dr. Patel.  In support of their position, defendants contend "the issue in this case is nearly identical to that in Regina v. Dalsheim[, No. 78-CV-1627 (CES), 1979 U.S. Dist. LEXIS 8008 (S.D.N.Y. Dec. 13, 1979)]."  In Regina, the prisoner-plaintiff alleged his Eighth Amendment rights were violated when NYSDOC medical personnel deviated from the dosage and type of medication prescribed by an outside physician who had previously treated the plaintiff. Id. at *5-6.  The court concluded that summary judgment was warranted because, even viewing the allegations in the light most favorable to the plaintiff, the defendants' decision to administer a different type of drug and at a lower dosage constituted, at most, medical malpractice. Id. at 9.

The present case is distinguishable from Regina because plaintiff presents evidence showing that defendants were aware of facts giving rise to the inference that Mr. Fleming faced a substantial risk of harm if he did not receive Natrecor.  Unlike with the plaintiff in Regina, four different physicians recommended that plaintiff's husband be treated with Natrecor to help stabilize his heart condition, see Ex. A to Pl's. Aff., Dkt. No. 15-2 (Dr. Vince); Mr. Fleming's Medical Records, Dkt. No. 13, 265 (Dr. Varansani), 267 (Dr. Maynard), 608 (Dr. Foote).  Additionally, at least two of these physicians warned that Mr. Fleming would likely die if he did not receive Natrecor drug therapy. See Ex. A. to Pl's. Aff., Dkt. No. 15-2, 2 ("Without this medication, there is a very high likelihood that he will die within the year."); Mr.

Fleming's Medical Records, Dkt. No. 13, 608 (" . . . it is medically necessary for him to attend a CHF clinic weekly to receive intravenous Natrecor.  If he does not receive this aggressive therapy he will most certainly have worsening of his condition requiring hospitalization and, otherwise, contributing to morbidity and potential mortality.").  Mr. Fleming's condition worsened dramatically at Walsh, whereas the plaintiff in Regina did not suffer a heart attack, let alone die, while under the defendants' care. Regina, 1990 U.S. Dist. LEXIS 8008, at *9. Most significantly, the plaintiff in Regina did not present any evidence of warnings from his treating physicians stating that he would suffer substantial harm if he did not receive the prescribed medication.  In fact, his condition eventually stabilized and he no longer needed to be housed in the prison's infirmary. Id. at *21-22.

The sheer number of notices given to defendants indicating the need for Mr. Fleming to be administered Natrecor, coupled with the urgent warnings from two of his physicians that he would likely die if not provided the medication, present a genuine issue of fact on which a reasonable jury could determine defendants were deliberately indifferent to Mr. Fleming's medical needs.  Quite specifically, Dr. Vince and Dr. Foote made defendants aware of the substantial risk, i.e., death, associated with discontinuing Mr. Fleming's Natrecor treatment.  Having elected to ignore such warnings, there is sufficient evidence to conclude that defendants consciously disregarded the risk of death to Mr. Fleming.  Therefore, defendants' argument as to the sufficiency of the evidence presented to show deliberate indifference is unpersuasive.

Finally, defendants make a brief argument that there is no evidence showing that their acts or omissions were the proximate cause of Mr. Fleming's death.  This argument must be rejected in light of the multiple notices and warnings from various physicians, and

more importantly, Dr. Vince's declaration stating his opinion that defendants' decision to discontinue Mr. Fleming's Natrecor treatment led to his decompensated heart failure and eventual death. See Vince Decl., Dkt. No. 15-5, ¶¶ 16-17.

### 2. Dr. Sharma's Involvement as Director of Walsh

Defendant Sharma alternatively argues that there is insufficient evidence of his personal involvement in the alleged deprivation of Mr. Fleming's Eighth Amendment rights. Dr. Sharma contends that his participation in Mr. Fleming's care was limited to his role as Medical Director of the Walsh facility. He therefore argues that he may not be held liable without plaintiff showing that he acted as more than Dr. Zaki's supervisor.

A supervisory defendant may not be held liable in an action brought pursuant to § 1983 absent evidence that he was personally involved in the conduct giving rise to the alleged constitutional deprivation. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). A defendant will be considered personally involved if there is evidence showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Dr. Sharma's personal involvement is based upon his direct participation in Mr. Fleming's medical care as well as his alleged deliberate indifference to Mr. Fleming's rights when failing to act on information indicating that Natrecor was necessary for Mr. Fleming's

survival. Dr. Sharma first examined Mr. Fleming on August 31, 2004. Sharma Decl., Dkt. No. 12-7, ¶ 5. Prior to that evaluation, Dr. Sharma had ordered him transferred to St. Elizabeth Hospital on July 27, 2004 for treatment of his acutely decompensated heart failure where he remained until August 7, 2004. Id. at ¶ 3. While at St. Elizabeth Hospital, Mr. Fleming's treating physician suggested administering Natrecor or dobutamine to treat Mr. Fleming's heart condition. See Mr. Fleming's Medical Records, Dkt. No. 13, 267. Despite this recommendation, as well as the summary transfer record signed by Dr. Varansani on August 9, 2004 indicating that Mr. Fleming should receive Natrecor, see id. at 264-65, Dr. Sharma did not prescribe Natrecor for Mr. Fleming. Dr. Sharma examined Mr. Fleming again on September 1, 2004 and May 31, 2005. Sharma Decl., Dkt. No. 12-7, ¶¶ 6-7. He also discussed the issuance of Do Not Resuscitate ("DNR") orders with Mr. Fleming on June 8, 2005. Id. at ¶ 8.[2]

In light of these actions, Dr. Sharma's role in the care of Mr. Fleming was more than that of a supervisor or some other managerial official. The evidence presented does not indicate that Dr. Sharma merely remained in his office while supervising the administration of medical treatment from afar. Much to the contrary, he in fact provided direct care to Mr. Fleming on several occasions and declined to prescribe Natrecor despite the recommendations of other physicians. He was therefore personally involved in Mr. Fleming's medical care and is subject to liability for the alleged deprivation of Mr. Fleming's constitutional rights.

---

[2] It is presumed that Dr. Sharma mistakenly identified the date referenced in paragraph 8 of his declaration as June 8, 2004 as other documents indicate he discussed DNR orders with Mr. Fleming on June 8, 2005. In any event, the fact that Dr. Sharma held this discussion with Mr. Fleming is more significant than the date on which it occurred.

In addition to his direct participation in Mr. Fleming's treatment, there is sufficient evidence demonstrating that Dr. Sharma was personally involved because of his deliberate indifference to Mr. Fleming's rights when failing to act on information showing that Mr. Fleming was not receiving proper medical treatment. Plaintiff has stated in her affidavit that she spoke with Dr. Sharma about prescribing Natrecor for her husband, yet Dr. Sharma's only response was that he would consider the decision. Pl's. Aff., Dkt. No. 15, ¶ 66. Plaintiff also urged Dr. Sharma to review her husband's medical records so that he would be aware of the medications he needed. Id. at 63. Further, as already discussed, Dr. Sharma was provided with Mr. Fleming's medical records which demonstrate a strong consensus among various physicians that Mr. Fleming needed Natrecor to treat his severe heart condition. Plaintiff's communications with Dr. Sharma, especially in light of the information contained within Mr. Fleming's medical records, constitute information indicating that Mr. Fleming's constitutional rights were being violated. Having failed to act upon such information, Dr. Sharma was personally involved in the alleged indifference to Mr. Fleming's serious medical needs.

### 3. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. A defendant acting in the course of his official duties is entitled to qualified immunity if the constitutional right violated was not clearly established at the time of his conduct. Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). However, even if the constitutional right was clearly established, a defendant may nonetheless be entitled to qualified immunity so long as it was objectively reasonable

for him to believe that his actions did not violate the plaintiff's constitutional rights. Pabon, 459 F.3d at 248 (citing Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002)).

The right to be free from deliberate indifference to one's serious medical needs has long been established since the United States Supreme Court's decision in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). Accordingly, this right was clearly established at the time of the alleged unconstitutional conduct, see LaBounty v. Coughlin, 137 F.3d 68, 74 (2d Cir. 1998), and the inquiry must focus upon whether defendants could have reasonably believed that their conduct did not violate Mr. Fleming's constitutional rights.

Defendants contend that it was objectively reasonable for them to refuse to administer Natrecor to Mr. Fleming. They emphasize their decision to consult with Dr. Patel, a cardiologist, and his supporting opinion that Natrecor was not necessary for Mr. Fleming's treatment. Their argument follows that qualified immunity is warranted when reasonable officials could disagree about whether their actions are constitutional.

Despite Dr. Patel's opinion, defendants are not entitled to qualified immunity because the very nature of plaintiff's lawsuit calls into question the reasonableness of their decision not to administer Natrecor to Mr. Fleming. See Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999). Given the extensive medical records recommending that Mr. Fleming be prescribed Natrecor, there are genuine issues of material fact regarding whether defendants consciously disregarded the substantial risk to Mr. Fleming's health posed by their failure to prescribe Natrecor. While the consultation of Dr. Patel is relevant to determine whether defendants were deliberately indifferent to Mr. Fleming's medical needs, his opinion does not necessarily entitle the defendants to qualified

immunity. Rather, summary judgment on qualified immunity grounds is warranted only when

> no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (quoting Robison v. Via, 821 F.3d 913, 921 (2d Cir. 1987) (internal quotations omitted)). Even in light of Dr. Patel's opinion, a reasonable jury could nonetheless determine that it was objectively unreasonable for defendants not to administer Natrecor to Mr. Fleming because of the numerous contrary warnings and recommendations from his treating physicians along with his fluctuating cardiac health while at the Walsh medical facility. Therefore, defendants are not entitled to qualified immunity at this stage and their motion for summary judgment of the Eighth Amendment claim will be denied.

### B. Defendants' Motion for Summary Judgment of Plaintiff's Loss of Consortium Claim

Defendants also argue that plaintiff's claim for loss of consortium is not a cognizable derivative claim pursuant to § 1983. Plaintiff does not respond to defendants' argument, and accordingly, defendants' motion for summary judgment of plaintiff's loss of consortium claim will be granted.

Plaintiff's claim for loss of consortium may not be brought pursuant to § 1983 because the claim is not based upon a deprivation of her constitutional rights. Rather, it is a state law claim for the loss of her husband's love, support, and services. Additionally,

plaintiff may not assert supplemental jurisdiction for her loss of consortium claim because her first cause of action is brought on behalf of another party, that being her late husband. See Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) (McAvoy, C.J.) (citing Finley v. United States, 490 U.S. 545, 556, 109 S. Ct. 2003, 2011 (1989)).  Therefore, no basis for supplemental jurisdiction exists and, especially without an opposing argument from plaintiff, defendants are entitled to summary judgment for the loss of consortium claim.

## IV.  **CONCLUSION**

Defendants' motion for summary judgment of the Eighth Amendment claim must be denied because there is a genuine issue of material fact as to whether defendants consciously disregarded a substantial risk to Mr. Fleming's health when failing to provide him with Natrecor.  The numerous warnings and recommendations from various physicians, including two warnings of death if Mr. Fleming did not receive Natrecor, render defendants' arguments as to the sufficiency of the evidence and qualified immunity unpersuasive.  Further, there is evidence showing that Dr. Sharma was personally involved in the alleged deprivation of Mr. Fleming's constitutional rights because he at times directly participated in Mr. Fleming's medical care and failed to act upon information indicating that Mr. Fleming's constitutional rights were being violated.

Defendants' motion for summary judgment of plaintiff's loss of consortium claim must be granted because plaintiff's claim is not cognizable pursuant to § 1983, plaintiff may not assert supplemental jurisdiction through a claim asserted on behalf of another party, and in any event, plaintiff fails to address defendants' argument for summary judgment of that claim.

Therefore, it is

ORDERED that

(1) defendants' motion for summary judgment of the Eighth Amendment claim is DENIED; and

(2) defendants' motion for summary judgment of plaintiff's loss of consortium claim is GRANTED and that claim is DISMISSED.

IT IS SO ORDERED.

United States District Judge

Dated: March 31, 2009
      Utica, New York